IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-02817-MSK

**ALFRED H. SONNENFELD, JR.,**

    Plaintiff,

v.

**COMMISSIONER, Social Security Administration,**

    Defendant.

## OPINION and ORDER

**THIS MATTER** comes before the Court on Plaintiff Alfred H. Sonnenfeld's[1] appeal from the Commissioner of Social Security's (the "Commissioner") final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§1381-83c. Having considered the pleadings and the record, the Court

    **FINDS** and **CONCLUDES**

**I.    Jurisdiction**

Mr. Sonnenfeld filed a claim for disability insurance benefits pursuant to Titles II and XVI in August 2013, asserting that his disability began approximately five months earlier. After his claim was initially denied, Mr. Sonnenfeld filed a written request for a hearing before an

---

[1]    There is some discrepancy in the record and the filings before the Court as to the spelling of the Claimant's last name. The Complaint spells it "Sonnefeld" while most of the documents in the agency record (medical documentation, application materials, *etc.*) spell it "Sonnenfeld." Because it appears to the Court that the most likely explanation is that there was a spelling error when the initial complaint was filed and the lawsuit was initiated, the Court will use the "Sonnenfeld" spelling in this opinion.

Administrative Law Judge (the "ALJ"). This request was granted and a hearing was held in August 2015.

The ALJ's Decision applied the five-step social security disability claim evaluation process: (1) Mr. Sonnenfeld had not engaged in substantial gainful activity after April 18, 2013; (2) he had the severe impairments of a left transhumeral amputation and left ankle/foot degenerative joint disease with neuropathic pain; (3) he did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App'x 1; and (4) Mr. Sonnenfeld had the residual functional capacity ("RFC") to perform light work as set forth in 20 C.F.R. § 416.967(b)[2] with various limitations, and he could perform jobs that he previously held. The Decision did not proceed to "Step 5" of the social security disability analysis; instead, based on its Step 4 conclusion, the Decision determined that Mr. Sonnenfeld was not and had not been under a disabled under the Social Security Act.

The Appeals Council denied Mr. Sonnenfeld's request for review of the Decision, making the Decision the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Mr. Sonnenfeld's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

---

[2] All references to the Code of Federal Regulations (C.F.R.) are to the 2015 edition, which was the version in effect at the time of the ALJ's decision. Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404. The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

## II. Relevant Material Facts

Mr. Sonnenfeld claims the onset of disability on April 18, 2013. An automobile accident in 1977 caused severe injuries on his left side of his body. As a result of the accident, his left arm was amputated, and significant injuries to his left leg and foot required ongoing treatment over many years. At the time of his application for benefits, Mr. Sonnenfeld asserted that he suffered severe impairments of a left transhumeral amputation and left ankle/foot degenerative joint disease with neuropathic pain.

Prior to his application, Mr. Sonnenfeld worked as a tax preparer, employee benefits counselor, financial analyst, insurance auditor, order manager, and ledger accountant. Mr. Sonnenfeld's last period of employment apparently was as a customer service representative, which employment ended in April 2013.

**T**reatment:

In March 2014, Mr. Sonnenfeld was seen by Dr. Marshall Meier, M.D. Dr. Meier noted that Mr. Sonnenfeld appeared to have difficulty explaining what symptoms he was experiencing and how they might have changed. Dr. Meier's records reflect, however, that Mr. Sonnenfeld had complaints about pain in his previously-injured left foot that had worsened during recent years. Mr. Sonnenfeld also experienced swelling in his lower left leg and foot, and that he sometimes was required to sit down and elevate his leg in order to provide relief. However, Mr. Sonnenfeld did not exhibit any discomfort or disability getting on or off the examination table and/or moving around the examining room. Dr. Meier opined that Mr. Sonnenfeld was able to stand for two-to-four hours, he could perform postural activities on an occasional basis, and he could lift up to twenty pounds, both occasionally and frequently.

Mr. Sonnenfeld also was seen by Dr. Amy M. Tubay, M.D. on three occasions in 2014. The first encounter occurred in February, when the records state that Mr. Sonnenfeld saw Dr. Tubay for treatment for "chronic sequelae" (complications) associated with his prior leg trauma. The record of this visit reflects Dr. Tubay thought that Mr. Sonnenfeld's condition "[p]robably qualifies him for disability." The February 2014 documentation also states that "[Mr. Sonnenfeld] will pursue disability claim with a specialist & will return with any paperwork he thinks I can help him with." In April, 2014, the records reflect Mr. Sonnenfeld's extremity weakness, numbness in extremities, and stable leg paresthesia (burning or prickling sensation). Mr. Sonnenfeld had a third appointment with Dr. Tubay on December 8, 2014. That day, Dr. Tubay completed a single page document stating that she was treating Mr. Sonnenfeld and that he needed to elevate his feet every two hours for 30 minutes. No explanation for the prescription was provided.

Mr. Sonnenfeld consulted Dr. Angelo Giarratano, D.P.M., in April and May 2015, to address the pain and other symptoms in his left leg. Treatment records reflect that he reported severe pain in his leg, but that he was in no acute distress at the time of his appointment. Mr. Sonnenfeld had an abnormal gait secondary to foot drop, limited range of motion and strength but no sensation in his left foot. Dr. Giarratano diagnosed idiopathic neuropathy in Mr. Sonnenfeld's left foot and prescribed medication. He also ordered x-rays of Mr. Sonnenfeld's foot. In a subsequent visit, Dr. Giarratano noted that Mr. Sonnenfeld experienced reduced sensation in his lower left leg as well as a slight shortening of that leg, and that Mr. Sonnenfeld reported a pain level of five out of ten. Dr. Giarratano noted that Mr. Sonnenfeld responded well to the medication prescribed to treat his neuropathy.

**Opinions of non-treating physician:**

Dr. James McElhinney, M.D., conducted a record review in conjunction with the initial consideration of Mr. Sonnenfeld's application in March 2014. Dr. McElhinney concluded that Mr. Sonnenfeld could stand for up to four hours at a time and perform light work. He also concluded that Mr. Sonnenfeld's ability to perform that work nonetheless was limited by an inability to perform manipulative activities with his left upper extremity, and Mr. Sonnenfeld should not be exposed to unprotected heights and uneven ground due to his impaired left leg/foot. At of the time of this review, Dr. McElhinney did not have medical records from Dr. Tubay's April and December assessments or records of Mr. Sonnenfeld's visits with Dr. Giarratano.

### III. Standard of Review

On appeal, a reviewing court's judicial review of the Commissioner of Social Security's determination that claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires more than a scintilla of evidence but less than a preponderance of the evidence. *Lax*, 489 F.3d at 1084; *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct

legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner.

IV.     **Discussion**

Mr. Sonnenfeld asserts[3] two principal arguments. First, he contends that the Decision improperly disregarded the opinion of his purported treating physician, as well as his own testimony, that he needed to elevate his feet for thirty minutes every two hours. Second, he argues that the Decision improperly failed to address whether a March 2016 social security policy interpretation ruling with regard to credibility determinations altered the assessment of Mr. Sonnenfeld's symptoms.

**A.     Did the ALJ err in giving little weight to Dr. Tubay's Opinion that Mr. Sonnenfeld Should Elevate His Feet for Thirty Minutes Every Two Hours?**

Mr. Sonnenfeld's first argument is that the ALJ erred in giving little weight to Dr. Tubay's opinion that Mr. Sonnenfeld should elevate his feet to at least the waist-high level for thirty minutes out of every two hours. The Commissioner responds that Dr. Tubay's opinion on the need for elevation is not supported by evidence in the record, and the evidence in the record is consistent with the Decision. This is a potentially dispositive issue because according to the testimony of the vocational expert, such limitation would preclude Mr. Sonnenfeld from performing his past work or any other.[4]

---

[3]     Mr. Sonnenfeld initially asserted that the Decision failed to accurately assess the opinion of a treating physician (Dr. Meier) insofar as it imposed restrictions on his ability to stand and his ability to engage in postural activities. However, in his Reply brief (**#21**), Mr. Sonnenfeld conceded that any deficiencies in this regard were not sufficient to warrant remand.

[4]     As a threshold matter, the Court must mention one argument that Mr. Sonnenfeld does *not* make. He does not argue that Dr. Tubay was his treating physician, and as such, her opinion

6

The Decision afforded Dr. Tubay's opinion relatively little weight for a variety of reasons. First, in assessing the Claimant's credibility, the ALJ stated:

> In addition the claimant alleged that he elevates his foot about every two hours. While the claimant may elevate his foot, the medical necessity of this is not well established in the record. Dr. Tubay submitted a statement indicating that the claimant needs to elevate his feet, but she provided no reason for this need for elevation and no supporting objective findings (record references deleted). Further the treatment examining notes from the relevant period do not support a need to elevate his foot.

Then in assessing Dr. Tubay's opinion, the ALJ states:

> In December 2014, Dr. Tubay stated that the claimant needs to elevate his feet every two hours for thirty minutes at waist height. (record references deleted) The undersigned accords limited weight to this opinion. As noted above, Dr. Tubay provided no reason or explanation for this need for elevation. There are no objective findings in the record from Dr. Tubay to support this limitation. Moreover, the treatment and examination notes from the relevant period do not support a need for elevation. For example, Dr. Giarratano does not recommend elevation in any of his treatment notes.

Mr. Sonnenfeld's argument begins with a persuasive observation that the underlying issue is his pain, and that Dr. Tubay's opinion is intended to be a palliative for it. His testimony is unrebutted and corroborated by medical records that his left leg and foot swell and cause him pain which has increased over time. He described it at 5 on a scale of 10 to Dr. Giarratono and explained to each physician that elevates his foot and leg in order to relieve it.

Ordinarily, the question of pain in a Social Security context is whether it is disabling. The Tenth Circuit mandates application of a three-part test for determination of that issue. Specifically, an ALJ must consider:

> (1) [W]hether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

---

generally is afforded controlling weight so long as it is not inconsistent with the other substantial evidence in the record. *See, e.g., Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). Therefore, the Court will assume for the purposes of this appeal that Mr. Sonnenfeld concedes that Dr. Tubay's opinion is not entitled to controlling weight.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987); *accord Brownrigg v. Berryhill*, 688 Fed. App'x 542, 545 (10th Cir. 2017)

Here, the ALJ essentially applied the *Luna* test, finding that Mr. Sonnenfeld's medically determinable impairments could reasonably be expected to cause him pain, but that his statements concerning the intensity, persistence and limiting effects of his pain are not credible "to the extent that they are inconsistent with the above residual functional capacity assessment and the medical evidence of record." Putting aside the apparent circularity in the finding, it facially satisfies *Luna*, and is sufficient to find that Mr. Sonnenfeld is not disabled by pain, alone.

The difficult in this case, however, is that Mr. Sonnenfeld did not seek disability because of his pain. Instead, he contends that his ability to work is dependent upon his ability to relieve his pain – particularly by using periodic elevation of his leg and foot. Dr. Tubay's opinion does not define a physical limitation; it constitutes a prescription for pain relief quantifying the frequency and duration of the elevation protocol.

Viewing Dr. Tubay's opinion as prescription rather than a limitation renders some of the ALJ's grounds for discounting it unsubstantiated. For example, the appropriateness and efficacy of elevation of Mr. Sonnenfeld's left foot and leg to address his pain is well supported in the treatment notes of Dr. Tubay, Dr. Giarratono and Mr. Sonnenfeld's testimony. Mr. Sonnenfeld stated both to his doctors and in this matter that when he experiences sever left lower leg and foot pain, he is forced to seek relief by periodically elevating his leg.

But one ground for discounting Dr. Tubay's opinion is meritorious. There is no medical evidence that establishes that elevation of Mr. Sonnenfeld's foot and leg(s) to waist height for thirty minutes every two hours is necessary to enable Mr. Sonnenfeld to work. Dr. Tubay offers

no explanation for her prescription or its particulars.  Even though other medical providers note Mr. Sonnenfeld's pain and acknowledge his means of addressing it by elevation, there are no findings that elevation at the frequency and for the period prescribed by Dr. Tubay is the only, or even the best, method for Mr. Sonnenfeld to relieve his pain and swelling.  Thus, the record does not demonstrate the **necessity, as distinguished from the effectiveness,** of this treatment to address Mr. Sonnenfeld's pain.  For this reason, the ALJ was justified in not adopting Dr. Tubay's prescriptive opinion as a limitation or restriction in determining Mr. Sonnenfeld's RFC.

**B.      The Decision's Failure to Apply SSR 16-3p.**

Mr. Sonnenfeld  also argues that the ALJ erred in assessing the credibility of his statements and that such assessment does not comply with SSR 16-3p.  SSR 16-3p is a policy interpretation ruling issued by the Social Security Administration that generally eliminates "credibility" assessments from the social security disability analysis.  It substitutes assessment of the *consistency* of a claimant's statement with the record in its entirety.  The Commissioner responds that SSR 16-3p was not issued until March 2016 – seven months after the Decision was issued – and thus it was not applicable to that determination.

There is some dispute as to whether SSR 16-3p should apply retroactively to district court appeals of ALJ decisions decided prior to the policy interpretation, and the Tenth Circuit has not directly addressed this particular question.  *See, e.g., Camacho v. Berryhill*, No. 16-cv-1100 SMV, 2017 WL 4990539, at *5 (D.N.M. Oct. 27. 2017) (declining to apply SSR 16-3p retroactively); *Lee v. Berryhill*, No. CIV-15-415-RAW-SPS, 2017 WL 1167251, at *1 (E.D. Okla. Mar. 28, 2017) (applying SSR 16-3p retroactively); *but see Paulsen v. Colvin*, 665 Fed. App'x 660, 663 (10th Cir. 2016) (applying prior policy interpretation but noting in the citation to it that it had been superseded).  There is also some question as to whether SSR 16-3p actually

changes the substantive credibility/consistency analysis, or whether it merely updated the terminology used.  *See, e.g., Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017).

This Court finds the reasoning of *Camacho* and *Paulsen* to be more persuasive and therefore declines to retroactively apply policy interpretation as found in SSR 16-3.  In addition, even if the ALJ were to find Mr. Sonnenfeld's complaints about pain to be fully credible under either standard, the justification for rejecting Dr. Tubay's prescriptive opinion would remain well founded.

For the forgoing reasons, the Commissioner of Social Security's decision is **AFFIRMED.**  The Clerk shall enter a Judgment in accordance herewith.

DATED this 30th day of March, 2018.

B**Y THE COURT:**

_____

Marcia S. Krieger
United States District Judge